AMERICAN SURETY COMPANY OF NEW YORK *v.* FIDELITY & DEPOSIT CO., OF MARYLAND.

4-6847                                      165 S. W. 2d 65

Opinion delivered October 26, 1942.

858

*House, Moses & Holmes,* for appellant.

*Rose, Loughborough, Dobyns & House,* for appellee.

HUMPHREY, J. On September 19, 1938, the State of Arkansas, through its attorney general, Jack Holt, brought suit in the Pulaski circuit court against Ed F. McDonald, the Fidelity & Deposit Company of Maryland and the American Surety Company of New York wherein judgment was prayed against each of said defendants for the sum of $5,996.12, with interest at the rate of six per cent. from May 12, 1938.

The complaint alleged that Ed F. McDonald was elected secretary of state for the term beginning 1933 and ending January, 1935; that he executed two general or official bonds in the sum of $5,000 each, one being signed by the Fidelity & Deposit Company of Maryland and the other being signed by the American Surety Company of New York, and that the Fidelity & Deposit Company of Maryland, on December 29, 1932, signed a disbursing agent's bond in the sum of $6,000 for Ed F. McDonald; that all three bonds were signed, approved and filed in accordance with law prior to the time Ed F. McDonald entered upon his duties as secretary of state; that the two general or official bonds contained the following recital: "Whereas, the above bounden Ed F. McDonald, was on the 8th day of November, 1932, elected to the office of secretary of state for a period beginning January 9, 1933, and ending January 9, 1935.

"Therefore, the condition of the above bond is such that if the said Ed F. McDonald shall well, truly and faithfully discharge and perform the duties of his office, and at the expiration of his term of office shall render unto his successor in office a correct account of all sums of money, books, goods, valuables, and other property, as it comes into his custody, as such secretary of state, and shall pay and deliver to his successor in office or any other person authorized to receive the same, all balances, sums of money, books, goods, valuables, and other property, which shall be in his hands, and due by him, then the above obligation shall be null and void; else the same to remain in full force and virtue."

It was further alleged that the disbursing agent's bond contained the following recital: "The conditions of the above bond is such that if the said Ed F. McDonald as such disbursing agent, or anyone he may designate to act for him, shall well, truly and faithfully disburse appropriations of said office according to laws governing same and especially Act 781 of the 1923 General Assembly. At the expiration of his term of office he shall render unto his successor in office a correct account of all sums of money, books, goods, valuables and other property which shall be in his possession as such disbursing agent of said office. And shall, further, pay and deliver to his successor in office, or any other person authorized to receive same, all balances, sums of money, books, goods, valuables and other property, which shall be in his possession and due by him, then the above obligation shall be null and void; else the same to remain in full force and virtue"; that the two general or official bonds were required to be and were executed, approved and filed under the provisions of § 5406 of Pope's Digest which is as follows: "The secretary of state shall, before he enters upon the discharge of his duties, enter into bond, with good and sufficient security, to the governor and his successors in office, in the sum of five thousand dollars, to be approved by the governor, conditioned that he will well and truly perform and discharge the several trusts and duties of secretary of state, and in all things touching and concerning the said office shall well, truly and faithfully execute and perform the same; which bond shall be filed with the auditor"; that the disbursing agent's bond executed by Ed F. McDonald was signed, approved and filed under § 4366 of Pope's Digest, which is as follows: "Each disbursing agent shall be required to give bond, in such amount as shall be deemed necessary by the auditor of state, and said bond shall be protection to the state or any of its creditors in case of losses sustained by reason of the action of said person. The bond shall be made by a surety company and the premium shall be a proper charge against the state. The bond shall be approved by the governor and filed in the office of the state auditor. Each disbursing agent shall

select a person to act for him in his absence and the actions of such person shall be considered the actions of the disbursing agent and the disbursing agent shall be responsible under his bond for same. The disbursing agent shall notify the auditor of state of the selection of such person. *Id.* § 3.''

It was further alleged that during the period Ed F. McDonald served in office as secretary of state, from January 9, 1933, and by virtue of said office as disbursing agent, he purchased certain supplies for the state in the total sum of $5,996.12, for which vouchers were issued and paid in the sum of $5,996.12, but which were never delivered to the state or received by the state although both the vendors and Ed F. McDonald stated that the goods were delivered to the state in first class condition at the state capitol.

The prayer of the complaint was that the state of Arkansas have judgment against the secretary of state and the two surety companies and each of them in the total sum of $5,996.12 with interest.

The American Surety Company of New York filed an answer containing a general denial of all liability on its bond for any acts of Ed F. McDonald.

Ed F. McDonald filed an answer denying each and every material allegation in the complaint.

While this suit was pending the surety companies effected a settlement of the alleged liability in the sum of $3,264.70, or $1,632.35 each. At the time of the compromise and settlement, each surety company contended that the other was liable for the full amount of the debt, but they agreed to make the settlement, and that each would contribute one-half, and that they would submit the question of their liability at a later date. This was done, and the circuit court of Pulaski county adjudged that each should pay one-half of the amount of the compromise, from which judgment the American Surety Company of New York duly prosecuted an appeal to this court.

According to the stipulation of facts and the complaint in this case, the disbursing agent McDonald pur-

chased the merchandise for which vouchers were issued and paid and the merchandise was never delivered to or received by the state of Arkansas. It follows that the disbursing agent's bond was initially and primarily responsible for the shortage or fraud practiced upon the state.

Appellee argues and contends that the statute under which the disbursing agent's bond and the bond itself is responsible only for any fraud or shortage that exceeds the amount of any particular appropriation for any department of the state. We do not think this a fair construction of the statute authorizing the disbursing agent's bond or of the conditions of the bond itself. The disbursing agent's bond was for $6,000 and the conditions thereof were such that "if the said Ed F. McDonald as such disbursing agent, or anyone he may designate to act for him, shall well, truly and faithfully discharge appropriations of said office according to laws governing same and especially Act 781 of the 1923 General Assembly. At the expiration of his term of office he shall render unto his successor in office a correct account of all sums of money, books, goods, valuables and other property which shall be in his possession as such disbursing agent of said office. And shall, further, pay and deliver to his successor in office, or any other person authorized to receive same, all balances, sums of money, books, goods, valuables and other property, which shall be in his possession and due by him, then the above obligation shall be null and void; else the same to remain in full force and virtue." These conditions applied to the appropriations made for any department of government and did not limit the liability to excess expenditures above the appropriation. Such was not the purpose of Act 781, approved March 28, 1923. That act declared its own purpose. Said act (§ 4373 of Pope's Digest) reads as follows:

"The purpose of this act is to fix a definite responsibility on some one person to act for each agency of the state government in disbursing the funds appropriated to it by the general assembly. The auditor of state, with the consent and approval of the governor, is hereby

authorized to make such rules and regulations, in addition to the specific provisions of this act and not inconsistent therewith, as are necessary to carry out said purpose. *Id.*, § 10.''

We do not mean to say or intimate that the only protection the state had against fraud or shortages was the disbursing agent's bond. We think the state was also protected by the general or official bond or bonds for all shortages or frauds under the conditions of and the statute authorizing the execution of the general or official bond or bonds of the secretary of state. The general or official bond or bonds protected the state against shortages or frauds which were not or could not be collected under the disbursing agent's bond and for any shortages or frauds in excess of the amount of guaranty of the disbursing agent's bond.

This court ruled in the case of *Briggs* v. *Manning,* 80 Ark. 304, 97 S. W. 289, (quoting syllabus 4) that: ''The bond of a sheriff executed in his capacity as public adiministrator is primarily liable for any losses resulting from his failure to comply with its conditions, and remedies on it must be exhausted before recourse can be had to his official bond as sheriff.''

We think the rule announced in *Briggs* v. *Manning, supra,* should be applied in the instant case and, as applied, the disbursing agent's bond with the Fidelity & Deposit Company of Maryland as surety is primarily liable for shortages or frauds in the wrongful disbursement of moneys up to and including the sum of $6,000.

In the instant case the liability did not exceed $6,000. It was much less. In fact, under the compromise agreement, it was only $3,264.70. The amount of the bond will not be exhausted by the payment of the total sum, and the circuit court should have, under the undisputed facts, adjudged the total loss against the Fidelity & Deposit Company of Maryland instead of adjudging that each of the surety companies should pay one-half of the shortage.

It follows that judgment must be rendered here in favor of the American Surety Company of New York

against the Fidelity & Deposit Company of Maryland for $1,632.35.

The judgment is, therefore, reversed and judgment is entered here against appellee in favor of appellant for $1,632.35.